**Dated: June 21, 2022**

**The following is ORDERED:**



*Paul R. Thomas*
PAUL R. THOMAS
UNITED STATES BANKRUPTCY JUDGE

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF OKLAHOMA

In re:

WALTER DEWAYNE ALLEN            Case No. 22-80106-PRT
TAMMRA MAE ALLEN,             Chapter 13
          Debtors.

### ORDER GRANTING MOTION TO SET VALUE

Before the Court is Creditor 21st Mortgage Corporation's ("21st Mortgage") Motion to determine value of its collateral, a 2011 Buccaneer Mobile Home, (Docket Entry 61), and Response filed by Debtors Walter Dewayne Allen and Tammra Mae Allen (Docket Entry 97). The Court held an evidentiary hearing on the Motion on May 19, 2022, and the matter was taken under advisement. Having reviewed the file, evidence and testimony, the Court determines that the value of the collateral is $49,782.00.

The following findings of fact and conclusions of law are made pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

I.     **Jurisdiction.**

This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A).

II.    **Findings of Fact.**

Debtors Walter and Tammra Allen filed this Chapter 13 case on March 8, 2022. On Schedule D, filed March 26, 2022, they listed 21st Mortgage's claim at $54,000, and valued the manufactured home securing its claim at $45,000.[1] They noted that this claim was disputed, and that the nature of 21st Mortgage's lien on the collateral was an agreement they made and a judgment lien from a lawsuit. Debtors filed their Chapter 13 Plan proposing ongoing monthly mortgage payments regarding the manufactured home of $623.39 for 60 months, and monthly payments of $623.39 for 60 months on 21st Mortgage's arrearage claim valued at $36,156.62 with an interest rate of 6%.[2] 21st Mortgage filed its proof of claim on March 29, 2022, valuing its claim at $93,116.06, fully secured by the mobile home, with an arrearage due of $42,888.62, and interest rate of 9.83%.[3] Attached to the proof of claim is the Consumer Loan Note and Security Agreement dated December 5, 2014, between Debtors Walter D. Allen and Tammra M. Allen and 21st Mortgage identifying the collateral as a 2011 Buccaneer Manufactured Home, approximate length of 66 feet and width of 26 feet, purchase price of $60,583.22, and amount financed of $53,736,22.[4] Other attachments to the proof of claim include the Oklahoma Tax Commission Motor Vehicle Division, Lien Entry Form and Receipt dated January 14, 2015,[5] and Payment History dated March

---

[1] Docket Entry 33.
[2] Docket Entry 48.
[3] Claims Register, Claim No. 5 filed 3/29/2022.
[4] Creditor 21st Mortgage's Exhibit 1.
[5] Creditor 21st Mortgage's Exhibit 2. The Lien Entry Form identifies the collateral as a vehicle.

29, 2022. 21st Mortgage provided an updated Payment History at the evidentiary hearing, dated May 13, 2022.[6]

In support of its Motion, 21st Mortgage submitted a Home Inspection Report prepared by Donahue Lavergne.[7] Lavergne testified that he is a board-certified manufactured home appraiser, with approximately twenty-two years' experience as an appraiser of manufactured homes. He personally inspected Debtors' manufactured home on May 13, 2022, accompanied by Debtor Tammara Allen. Mrs. Allen pointed out various features, improvements and items needing repairs. Lavergne's Report includes photographs of Debtors' home. He described the home as clean, well-maintained and in good condition. He noted several repairs that needed to be made and assigned a total value of $2,910 as the cost of those repairs. This value was based solely upon his experience as an appraiser; he did not obtain estimates from contractors but stated he believed his estimates were generous. These items included replacement of baseboard moldings, repair of a light fixture in the second bedroom, repair or replacement of eight recessed lights in the kitchen, replacement of carpeting in the living room and master bedroom, painting the walls and ceiling of the master bedroom, and replacing wood trim in the living room. He observed that Debtors had installed a metal roof over the original shingled roof and estimated that this increased the value of the home by $5,400.

Lavergne explained that he utilizes a computer program to prepare his Inspection Report, known as the J.D. Power Used Manufactured Home Value Report. After entering the year, manufacturer and model of the home, size, and state and region in which the home is located into the computer program, the J.D. Power Report assigns a "Base Structure Value" to the

---

[6] Creditor 21st Mortgage's Exhibit 3.
[7] Creditor 21st Mortgage's Exhibit 4.

manufactured home, based on figures from the May-June 2022 Guide Edition. Lavergne can then adjust that base value by assigning an above or below average condition of the home, adding non-standard features or upgrades made to the home and entering the cost of repairs needed. Lavergne selected the size of the home as 28 feet by 60 feet, even though the information in the Consumer Loan Agreement listed the size as 28 by 66 feet. He explained that the 66 feet figure included six feet for the trailer hitch used to tow the home, which was not livable space. To arrive at the home's value, he only included actual living space so assigned the length as 60 feet. However, Lavergne admitted that he did not personally measure the length of the home.

Based upon his evaluation of the home, he assessed the condition of the home as good, which increased its value. He did not know what the difference in value was between a home in average or fair condition and a home in good condition. He added non-standard features of the home totaling $6,737, arriving at a value of $57,971.78. After manually entering his estimate of the costs to repair the home, he arrived at a value of $55,061.78 and entered that into his Report for 21st Mortgage. In reviewing his Report before the Court, Lavergne noted that he erroneously selected an upgrade of $3,696 for steel siding when he intended to include an upgrade of $5,400 for the metal roof, thus the correct value of the home without repairs should be $59,675.78 (Total Adjusted Value of Used Home $51,234.58 + Total Additional Features $8,441.20). Its value after repairs is $56,765.78.

Mrs. Allen testified that she and her husband purchased the home in December of 2014. It was a used 2011 double-wide, manufactured home. She described her home as being in good condition, although she noted that the roof had leaked so they installed a new metal roof in 2016. She accompanied Lavergne during his appraisal of the home, estimating that he spent at least thirty minutes inspecting the home, viewing each room of the home. She described electrical problems

with recessed lights in the kitchen. When the lights were in use, they overheated. Debtors had to limit their use of the lights to avoid a potentially dangerous situation.

Mrs. Allen testified that during the time they have lived in this home, various documents from 21st Mortgage have used different measurements for the home. Based upon her measurement of the home on May 18, 2022, the actual size of their home is 28 feet by 56 feet. The length does not include the "tongue" of the home. However, in a letter to Debtors from 21st Mortgage dated October 29, 2014, an attached NADA Guides Value Report lists a value of $44,777.20 without additional features or repairs for a 2011 Buccaneer home manufactured by Cavalier HMS, size 28 feet by 60 feet.[8] It does not include the VIN number of the home purchased by the Debtors. The letter specifically states that this is a base value only and "is not a valuation by 21st Mortgage of the specific manufactured home you are purchasing."[9] The Consumer Loan Note, Security Agreement signed by Debtors lists the size of the home as 28 feet by 66 feet.[10] Debtors' Exhibit D is a NADA Guide Used Value Report for a 2011 Buccaneer home, 28 feet by 66 feet, dated 12/05/2017. At that time, the Total Adjusted Retail Value of the Used home without additional features or repairs is listed as $25,822.30, based on the Nov-Dec 2017 Guide Edition. A J.D. Power NADA Guides Used Manufactured Home Value Report dated 11/04/2020, based on the Nov-Dec 2020 Guide Edition, lists the size as 28 feet by 66 feet, and sets a Total Adjusted (Retail) Value of a 2011 Buccaneer home at $45,167.60, including $1,394 of additional features.[11] The Debtors provided two valuations from J.D. Power created by their attorney, dated 5/16/2022, based on the May-June 2022 Edition. The first is for a 2011 Buccaneer measuring 28 x 66.[12] It assigns a Base

---

[8] Debtors' Exhibit B.
[9] Debtors' Exhibit B, page 1.
[10] Debtors' Exhibit C; Creditor's Exhibit 1.
[11] Debtors' Exhibit E.
[12] Debtors' Exhibit G.

Structure Value of $47,942.00 but decreases to $41,882.13 when assessed as fair condition, rather than average condition. The Report includes additional features of the home valued at $4,774, but these do not correlate exactly with the additional features included in Lavergne's Report. Total Adjusted (Retail) Value of Home and Optional Equipment for this 28 x 66 home in fair condition is $46,656.13. The second Report is for 28 x 60 2011 Buccaneer.[13] Its Base Structure Value is $44,382.00, the same value as in Lavergne's Report. However, the condition assigned is "fair," which reduces the value to $38,772.12. With selected additional features of $4,203, which do not correlate to Lavergne's Report, the Total Adjusted (Retail) Value of the Home and Optional Equipment is $42,975.12. Mrs. Allen testified that the VIN number of the home does not appear on the Valuation Reports she provided.

Both witnesses were credible and presented helpful information regarding value and condition of the home to the Court. The most consistent size included in the evidence presented is 28 x 60, as both Lavergne and Debtors chose that size for their respective J.D. Power Used Manufactured Home Value Reports. Therefore, the Court finds that to be the correct size to use for purposes of valuation. The Court also notes that the language of the Consumer Loan Note and Security Agreement references the size of the manufactured home as approximate.

Both parties agree that the Base Structure Value of the collateral is $44,382.00. They also agree that the metal roof installed by Debtors increased the value by $5,400, resulting in a total value of $49,782.00. Based upon the testimony of the parties, the description of the home's condition, and the age of the home, the Court finds that $49,782.00 is the value of the collateral for purposes of this case.

---

[13] Debtors' Exhibit H.

II.	**Conclusions of Law**

Creditor 21st Mortgage seeks valuation of its collateral pursuant to 11 U.S.C. §506 and Fed. R. Bankr. P. 3012. Section 506 is titled "Determination of secured status." The relevant portions to this Motion are in section (a):

> (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
> (2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined.[14]

The parties agree that Debtors' 2011 Buccaneer Manufactured Home secures their loan with 21st Mortgage, making 21st Mortgage a secured creditor. The issue is the valuation of the collateral and thus the value of the secured portion of 21st Mortgage's claim. In valuing the collateral, courts are to consider "the purpose of the valuation and of the proposed disposition or use of such property….."[15] Where property securing a claim is personal property in an individual case under chapter 13, the relevant valuation standard is replacement value of such property on the petition

---

[14] 11 U.S.C. § 506(a).
[15] 11 U.S.C. § 506(a)(1).

date, meaning "the price a retail merchant would charge for the property considering the age and condition of the property at the time value is determined."[16]

Valuation is a question of fact. When valuing a secured claim, the burden of proof may shift. "[T]he debtor bears the initial burden of proof to overcome the presumed validity and amount of the creditor's secured claim," but "the ultimate burden of persuasion is upon the creditor to demonstrate by a preponderance of the evidence both the extent of its lien and the value of the collateral securing its claim."[17]

Debtors initially valued their home at $45,000 in their Schedule D, and at the close of the valuation hearing, asked the Court to set a value between $42,000 and $45,000. Debtors did not submit a separate written appraisal but used the J.D. Power Guide to value the home. They agreed with much of Lavergne's appraisal but submitted various valuations of their 11-year-old manufactured home and highlighted problems with the electrical system which limited the use and enjoyment of the property. In its Motion for Valuation, Creditor 21st Mortgage asks the Court to set the value at $50,444.56.[18] At the evidentiary hearing, 21st Mortgage requested a valuation of $55,061.78 based upon the Home Inspection Report of its appraiser, Donahue Lavergne. Lavergne corrected his written report to include a greater value added due to Debtors' replacement of the roof, settling on a value of $56,765.78.

Based upon the evidence presented by both parties, the Court concludes that Debtors' assessment of the home is more accurate. Mrs. Allen's description of the age and condition of the home, and their various valuation reports were more persuasive to the Court. Lavergne failed to

---

[16] 11 U.S.C. § 506(a)(2).
[17] *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139-40 (3d Cir. 2012). *See also In re Rozinski*, 487 B.R. 549 (Bankr. D. Colo. 2013).
[18] Docket Entry 61.

measure the size of the home. Despite his years of experience as an appraiser of manufactured homes, Lavergne was unable to advise the Court of the differences in value based upon the condition of the property. Therefore, the Court finds that 21st Mortgage did not provide sufficient support for its requested valuation of $55,061.78. The Court concludes that the value of the collateral utilizing the standards set forth in §506(a) should be the Base Structure Value of the home in average condition with an increase allowed for the metal roof.

IV.   Conclusion.

IT IS THEREFORE ORDERED THAT Creditor 21st Mortgage Corporation's Motion to Determine Value of its collateral, a 2011 Buccaneer Manufactured Home, (Docket Entry 61) is **granted in part.** The Court finds that the value of the 2011 Buccaneer Manufactured Home is $49,782.00.

###